

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2007

# Ortega v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1647

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ortega v. Comm Social Security" (2007). *2007 Decisions*. Paper 618.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/618

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 06-1647

—————

ROBERTO ORTEGA,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

—————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 04-cv-05551
District Judge:  The Honorable William G. Bassler

—————

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2007

—————

Before: BARRY, FUENTES, and JORDAN, Circuit Judges

(Opinion Filed: August 6, 2007)

—————

OPINION

—————

BARRY, Circuit Judge

    Roberto Ortega appeals from a final order of the District Court affirming the

Commissioner of Social Security's denial of disability insurance benefits.  He contends

that the Commissioner's decision was not supported by substantial evidence in several respects. For the reasons that follow, we will affirm.

## I.

We write only for the parties, and will reprise only those facts necessary to our analysis. On August 9, 2001, Ortega filed a claim for disability insurance benefits commencing January 30, 1996 due to alleged depression, diabetes, and a heart condition. In a decision dated November 19, 2003, an administrative law judge ("ALJ") found that Ortega was insured for disability benefits through December 31, 1997, the last date on which he satisfied the requirements of 42 U.S.C. § 416(i). The ALJ concluded, however, that Ortega was not disabled within the meaning of the Social Security Act, and was therefore ineligible for benefits. After the Appeals Council denied review, Ortega sought review in the District Court, and, on December 23, 2005, the District Court affirmed. This appeal followed.

The District Court had subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction to review the final order of the District Court under 28 U.S.C. § 1291. We must sustain the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is "'less than a preponderance of the evidence but more than a mere scintilla.'" *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). It means "'such relevant evidence as a reasonable mind might accept as adequate

2

to support a conclusion.'" *Id.* (quoting *Jesurum*, 48 F.3d at 117).

## II.

The Commissioner may award disability insurance benefits to an individual who is under a "disability," defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An eligible claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c), and must have physical or mental impairments "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 423(d)(2)(A). It is undisputed that Ortega satisfied the insured status requirements only though December 31, 1997.

To determine whether a claimant is disabled, the Commissioner applies a five-step test. 20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity; if so, the claimant is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Jones*, 364 F.3d at 503. Next, the Commissioner asks whether the claimant's impairment is "severe"; a negative answer results in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Jones*, 364 F.3d at 503. At step three, the Commissioner asks whether the claimant suffers from a listed impairment or its equivalent. If so, the claimant is entitled to benefits; if not, the

3

Commissioner's inquiry proceeds to the next step. 20 C.F.R. § 404.1520(a)(4)(iii), (d); *Jones*, 364 F.3d at 503. Step four calls for the Commissioner to determine whether the claimant retains "residual functional capacity" to perform past relevant work; if so, the claimant is not entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); *Jones*, 364 F.3d at 503. Finally, at step five, the Commissioner determines whether the claimant, in light of his or her age, education, and work experience, can transition to other available work. A positive answer will result in the denial of benefits. 20 C.F.R. § 404.1520(a)(4)(v), (g); *Jones*, 364 F.3d at 503. The claimant bears the burden of establishing steps one through four; at step five, the burden shifts to the Commissioner. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

The ALJ made findings adverse to Ortega at steps three and five, and Ortega challenges these findings on appeal. With respect to step three, the ALJ found that Ortega's "severe" cardiac and mental impairments did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"), including § 12.04, the applicable Listing on depression. The ALJ did not credit Ortega's obesity and diabetes as being severe impairments, and Ortega challenges this alleged oversight. Ortega retained the residual functional capacity to perform sedentary work, however, and the ALJ found, at step five, that he was able to perform jobs that existed in significant numbers in the national economy. Ortega specifically challenges the ALJ's decisions to discount the testimony of his treating physician, his various complaints of pain, and vocational evidence that purportedly validated his disability.

We easily conclude, as did the District Court, that the ALJ did not err by failing to credit Ortega's obesity, diabetes mellitus, and diabetic peripheral neuropathy as severe impairments. Wholly aside from the fact that when applying for benefits, Ortega did not even allege disability based on obesity, the record shows that his obesity did not develop until well after his insured status expired. *See De Nafo v. Finch*, 436 F.2d 737, 739 (3d Cir. 1971) (concluding that impairment which was not disabling until after expiration of claimant's insured status did not establish claimant's entitlement to benefits); *Manzo v. Sullivan*, 784 F. Supp. 1152, 1156 (D.N.J. 1991) (same). Ortega likewise submitted no evidence that he was diagnosed with diabetes until after his last insured date. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (noting claimant's burden at step two). The evidence, rather, suggests an onset of diabetes mellitus sometime in 1998 or 1999, and shows that Ortega first complained of diabetic neuropathy in November 2003.

There is also substantial evidence to support the ALJ's finding that Ortega failed to demonstrate that his cardiac and mental impairments met or equaled an impairment in the Listings. We do not require the ALJ "to use particular language or adhere to a particular format" when evaluating a claimant's proof at step three, *Jones*, 364 F.3d at 505, as long as the decision permits "meaningful judicial review," *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Here, the ALJ specifically discussed 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, the Listing for affective disorders such as depression, and found that Ortega's evidence satisfied neither "B" nor "C" of the Listing. The ALJ also noted the absence of any clinical findings relating to Ortega's cardiac condition prior

5

to December 31, 1997, but nevertheless considered his post-insured medical records before concluding that his condition did not meet or equal any of the Listings. We have carefully reviewed the record and are satisfied that substantial evidence supports each of these findings.

Ortega contends that the ALJ "refused to comply" with regulatory guidelines for evaluating subjective complaints of pain, but we again find no error. Contrary to Ortega's patently false statement that the ALJ's pain evaluation amounted to a single paragraph of boilerplate language, the ALJ, in fact, identified the applicable factors in 20 C.F.R. § 404.1529, the Commissioner's pain evaluation guidelines, and gave "serious consideration" to Ortega's subjective complaints. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981). Significant among the ALJ's reasons for discounting Ortega's complaints were his admissions that he was able to live by himself and take care of his basic needs, take public transportation, visit friends, and travel to Florida to visit family. These activities, the ALJ found, "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (App. at 18.) There must also be objective medical evidence of some condition that could reasonably cause the pain, 20 C.F.R. § 404.1529(b); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999), and the only evidence of a medical condition existing before December 31, 1997 was a depressive episode in October 1996, unaccompanied by any complaints of disabling pain. We find substantial evidence to support the ALJ's finding that Ortega's subjective complaints were not entirely credible prior to his last insured date.

Ortega challenges, next, the ALJ's rejection of the opinion of his treating cardiologist, Dr. Carducci, that he "was unable to perform any type of work." (App. at 19, 322.) As the ALJ noted, Dr. Carducci based his 2003 assessment on four visits in 2001, nearly four years after Ortega's insured status expired. The ALJ also noted that Dr. Carducci's opinion was unsupported by his own objective findings that Ortega could lift up to ten pounds and had no limitations on sitting—findings that were consistent with an ability to perform sedentary work. *See* 20 C.F.R. § 404.1567(a). Dr. Carducci's findings, moreover, were inconsistent with those of Dr. Patel, who evaluated Ortega in November 2002 and concluded that there was "no evidence of heart failure," "normal" gait, reflexes, and grip, and an ability to do "both fine and gross movements with both hands." (App. at 283-84.) There is, in short, substantial evidence to support the ALJ's rejection of Dr. Carducci's assessment.

Finally, Ortega contests the ALJ's omission of certain vocational evidence that, he posits, validated his claim for disability benefits. This argument need not detain us for the simple reason that the supposedly omitted evidence documented Ortega's medical condition more than four years after his last insured date and could not have supplied the basis of his entitlement to disability insurance benefits. *See De Nafo*, 436 F.2d at 739. Although we need not address his distinct argument concerning Social Security Ruling 83-20, an argument not raised in the District Court, *see Krysztoforski v. Chater*, 55 F.3d 857, 860-61 (3d Cir. 1995), we find it to be without merit. Social Security Ruling 83-20, which requires an ALJ to call a medical expert when the ALJ is unable to determine the

7

onset date of a slowly progressing disease, is inapplicable where, as here, the claimant's

medical records are unambiguous. *Cf. Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir.

2001) (citing cases for the proposition that an ALJ must call on medical expert when

medical evidence is ambiguous and it is necessary to infer claimant's onset of disability).

Having carefully reviewed the record, we find substantial evidence to support the ALJ's

conclusion that Ortega was capable of performing a significant number of jobs existing in

the national economy.

### III.

For the reasons discussed, we will affirm the final judgment of the District Court.[1]

---

[1] We express our displeasure with the overheated rhetoric and ad hominem attacks on the ALJ that Abraham S. Alter, Esq., has seen fit to inject into Appellant's brief. (*See, e.g.*, Appellant's Br. at 7 (referring to the "ALJ's mistakes, all of them intentional and goal-directed"); 25 (accusing the ALJ of conducting a "goal-directed analysis" that was "premeditatedly wrong"); 27 (promising that "the ALJ's motives will become . . . much more clear"); 29 (referring to the ALJ's decision as "a parody of reality").) In another case before this very panel, we referred Mr. Alter to the Court's Standing Committee on Attorney Discipline

> so that the Committee may make a recommendation to the Court as to whether Mr. Alter should be disciplined for his repeated violations of Local Rule 28.1(c), his consistent disregard of the many reprimands he has received for those violations, and for conduct unbecoming a member of the bar of this court. *See* Rule 4.2, *Third Circuit Rules of Attorney Disciplinary Enforcement*.

*Cruz v. Comm'r of Soc. Sec.*, No. 06-2808, slip op. at 17-18 (3d Cir., July 30, 2007). We refer Mr. Alter to the Committee in this case as well.